UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DEBRA LYNN NORTON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **CITY OF SAN ANTONIO BY AND** | § | **SA-05-CV-1186 FB** |
| **THROUGH ITS AGENT, CITY** | § | |
| **PUBLIC SERVICE BOARD OF** | § | |
| **SAN ANTONIO,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**ORDER GRANTING DEFENDANT'S MOTION TO AMEND ANSWER**</u>

This order addresses the motion filed by defendant City Public Service (CPS) asking for leave to file an amended answer.[1]  In its motion, CPS explained that it recently discovered new information relevant to its stated reason for terminating plaintiff Debra Norton.  CPS asserted that the newly-discovered information supports an affirmative defense under the after-acquired evidence  doctrine.  CPS sought leave to file an amended answer to add the defense.  In response, Norton opposed the motion on grounds that CPS improperly withheld part of the information— or at least failed to make a good faith search for the information—and on grounds that CPS long anticipated using the other information even though CPS characterized the information as "recently received."

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after a scheduling order has been issued.[2]  The rule still applies after the deadline set by the scheduling

---

[1]*See* docket entry # 40.

[2]*S&W Enterprises v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003).

order has expired.[3]  Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge."[4]  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[5]  In determining whether the good-cause standard has been met, the court considers four factors:  (1) the movant's explanation for the failure to timely move for leave to amend, (2) the importance of the amendment, (3) potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice.[6]  In this case, three of these factors weigh in favor of allowing the  amendment.

   **Explanation for failing to timely move to amend**.  CPS's explanation for its late discovery of Norton's emails—that CPS did not realize it had Norton's computer hard drive—is not particularly persuasive, but it is not implausible.  Prior to being sued, CPS had no reason to believe that it might need the hard drive.  Once it was sued—six months after CPS discharged Norton—CPS may have had no reason to believe it still had the hard drive.  Although CPS does not offer much of an explanation for the six months between the time Norton filed her complaint and the time CPS discovered it had the hard drive, any lack of diligence during that time period is not fatal to CPS's request.  First, CPS produced the emails when it discovered them.  Second, CPS had nothing to gain from concealing the emails because it believes the volume and nature of

---

[3]*S&W Enterprises*, 315 F.3d at 535 (deciding that the rule applies after the deadline for amending pleadings has expired).

[4]FED. R. CIV. P. 16(b).

[5]*S&W Enterprises*, 315 F.3d at 535 (citation omitted).

[6]*S&W Enterprises*, 315 F.3d at 536.

the emails supports an affirmative defense.  Third,  it is doubtful CPS had much control over when the information from Norton's previous employers was produced.  CPS's explanation does not weigh in favor of amending its answer, but the explanation does not weigh against amending its answer.

     **Importance of the amendment**.  Under the after-acquired evidence doctrine, evidence of an employee's wrongdoing acquired by an employer after the employee's termination may act as a bar to damages.  "The rationale underlying consideration of after-acquired evidence is that the employer should not be impeded in the exercise of legitimate prerogatives and the employee should not be placed in a better position than he would have occupied absent the discrimination."[7]  To rely on the after-acquired evidence defense, an employer must establish that the wrongdoing was of such severity that the employee would have been terminated if the employer had known about the wrongdoing at the time of the discharge, or applicable, that the employer would not have hired the employee.[8]  Here, CPS has asserted that the numerous emails may explain why Norton failed to complete required tasks, resulting in her ultimate termination. CPS has explained that Norton discussed acts of violence against her supervisors in some emails. CPS maintains that it would have made the decision to discharge Norton earlier had it know about the emails.  CPS has also explained that it received the information from two of Norton's previous employers indicating that Norton misrepresented the reasons she left those employers. CPS maintains that it would not have hired Norton had it known the real reasons she left her previous employers.  If CPS proves these assertions, it is entitled to assert the after-acquired

---

[7]*See Shattuck v. Kinetic Concepts*, 49 F.3d 1106, 1108-09 (5th Cir. 1995).

[8]*See Shattuck*, 49 F.3d at 1108.

evidence defense.  That CPS should not be impeded in the exercise of its legitimate prerogatives, and that Norton should not be placed in a better position than she would have occupied absent the alleged FMLA violation, are important considerations that weigh in favor of amending CPS's answer.

**Potential prejudice**.  The deadline set by the scheduling order for amending pleadings in this  case was July 28, 2006.  CPS filed its motion seeking leave to amend on August 1, 2006—two business days after the deadline expired.  In the motion, CPS maintained that it received the information from Norton's previous employers on June 12, 2006 and July 28, 2006, and that it discovered the computer hard drive containing the emails in June 2006.  CPS stated that it then produced the emails to Norton because it realized the emails were significant to its defense.  Despite these actions, Norton contends that she will suffer prejudice if CPS is permitted to amend its answer because she will be required to expend time and money to discover whether the volume and content of Norton's emails were comparable to emails of other CPS employees. Discovery on the new evidence would not be prejudical for several reasons.  Discovery on the volume and nature of other employees' emails would not be burdensome because such discovery offers little value in proving Norton's claims.  Such information would have no bearing on whether Norton met her filing requirements.  Information about other employees' emails has limited relevance to Norton's claims because the after-acquired evidence doctrine goes to damages—not liability.[9]  Norton has always known about the nature and volume of her personal emails.  She has also known whether she truthfully represented her reasons for leaving her previous employers.  It is unlikely that Norton would suffer any real prejudice because CPS

---

[9]*See Shattuck*, 49 F.3d at 1108-09.

4

missed the deadline for filing an amended answer by two days.  That unlikelihood weighs in CPS's favor.

**Availability of a continuance**.  No trial date has been scheduled in this case.  A motion for summary judgment remains pending.  A trial date will not be scheduled until the motion for summary judgment is resolved.  Consequently, a continuance is available to cure any prejudice that Norton might experience.  The availability of a continuance weighs in CPS's favor.

Because three of the four factors in determining good cause weigh in favor of amending CPS's answer, I GRANT CPS's motion to file the amended answer (docket entry #40) and DIRECT the Clerk of the Court to file the amended answer attached to CPS's motion as of the date of this order.  If Norton determines that she requires additional time for discovery as a result of CPS's new affirmative defense, she must notify the Court by March 15, 2007.  Norton should identify the scope of the additional discovery in her notification, as well as the amount of time she seeks, in order to minimize any dispute about such discovery and to facilitate an appropriate order allowing additional discovery.

**SIGNED** on February 27, 2007.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE