UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBRA LYNN NORTON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF SAN ANTONIO BY AND | § | SA-05-CV-1186 FB |
| THROUGH ITS AGENT, CITY | § | |
| PUBLIC SERVICE BOARD OF | § | |
| SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND RECOMMENDATION
REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO:   Hon. Fred Biery
      United States District Judge

This memorandum and recommendation addresses a motion for summary judgment filed by defendant City Public Service (CPS). Through its motion, CPS seeks judgment on claims brought by plaintiff Debra Lynn Norton. I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1] After considering the motion and the pleadings in this case, I recommend that the motion for summary judgment be granted and judgment be entered in favor of CPS.

**Jurisdiction**

The District Court has jurisdiction in this case under 28 U.S.C. § 1331 because the case is

---

[1]*See* docket entry #29.

a civil action brought under the laws of the United States—specifically, the Family Medical Leave Act (FMLA).

## Norton's Claim

Norton has sued CPS alleging a violation of the FMLA.  Norton alleges that CPS terminated her because she requested FMLA leave.

## Standard for a Motion for Summary Judgment

A defendant in a civil action may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure at any time.[2]  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

## CPS's Argument about Prescriptive Relief

"Under the FMLA, an eligible employee is entitled to take up to 12 work weeks of leave in a 12-month period when, *e.g.*, the employee has a serious health condition that makes her unable to perform the duties of her position."[4]  "[E]mployers have a prescriptive obligation under the FMLA—they must grant employees substantive rights guaranteed by the FMLA. . . ."[5]  CPS's first summary-judgment argument addresses that prescriptive obligation.  CPS argues that Norton cannot show that CPS interfered with her substantive rights under the FMLA because Norton

---

[2] FED. R. CIV. P. 56.

[3] *Id.*

[4] *Haley v. Alliance Compressor*, 391 F.3d 644, 649 (5th Cir. 2004).

[5] *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).

cannot show that she was entitled to FMLA leave.  To prevail on a claim for prescriptive relief, a plaintiff must prove that: (1) she was an eligible employee, (2) her employer is a covered employer, (3) the employee was entitled to leave under the FMLA, (4) she gave her employer notice of her intent to take leave, and (5) the employer denied her FMLA benefits or interfered with FMLA rights to which she was entitled.[6]  CPS maintains that Norton cannot prove that she was entitled to FMLA leave because CPS had already decided to terminate Norton before she requested FMLA leave.  CPS maintains that it decided to terminate Norton on July 1, 2005, but that Norton did not request FMLA leave until July 11, 2005—the day that CPS notified Norton that she was terminated.

Implicit in CPS's argument is the proposition that an employee's right to take FMLA leave ends when an employer decides to terminate the employee's employment, rather than when an employer terminates the employee.  The only real authority[7] that CPS provides for this proposition is 29 C.F.R. § 825.216 which states as follows: "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been

---

[6]*See Hoge v. Honda of Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004) (setting forth the elements of an interference claim).

[7]CPS's other authorities do not support their proposition.  *See Brohm v. JH Properties*, 149 F.3d 517, 523 (6th Cir. 1998) (employee was no longer an eligible employee when he requested FMLA leave because he had already been notified that he was being terminated); *Maldonado v. Frio County*, No. SA-02-CA-1046-XR, 2004 WL 1304951 (W.D.Tex. June 1, 2004), at *5 (plaintiff was no longer an eligible employee when she was terminated before the time she intended to exercise her leave even though her leave request had been approved); *Mayo v. Trinity Marine Indus.*, No. CIV. A. 97-3993, 1999 WL 104421, (E.D. La. Feb. 23, 1999), at *3 (plaintiff was no longer an eligible employee where employer attested that plaintiff never requested leave before he officially informed plaintiff of his termination).  *But see Kennebrew v. NYC Hous. Auth.*, No. 01-CIV-1654-JSR, 2002 WL 265120 (S.D.N.Y. Feb. 26, 2002), at *19 ("No FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave.").

continuously employed during the FMLA leave period."[8]  That provision, however, applies to an employee whose employment is terminated while she is on FMLA leave.  It is unreasonable to read the provision to mean that an employee's right to FMLA leave ends when her employer decides to terminate her.

The District Court need not address CPS's argument, however, because Norton's complaint does not allege a prescriptive claim—that is, she does not allege interference with the exercise of FMLA rights.[9]  Instead, Norton's complaint alleges discrimination under the FMLA. The following excerpts from Norton's complaint shows that she is pursuing a discrimination claim:

> 17.  Prior to exhausting the twelve (12) weeks of medical leave allowed under the FMLA (as discussed in 29 U.S.C. (a)(1)), Defendant terminated Plaintiff's employment for taking or requesting this medical leave to care for her serious health condition.

> 18. Defendant terminated Plaintiff's employment for seeking designation and/or leave under FMLA, and/or the time she was forced to take off work to care for her serious health condition, which violated the protections of the FMLA as outlined in 29 U.S.C. § 2615(a).

These allegations allege a discrimination claim under 29 U.S.C. § 2615(a)(2).  That provision

---

[8]29 C.F.R. § 825.216(a).

[9]The statutory basis for a claim based on an employer's interference with the exercise of FMLA rights provides as follows:

> (a) Interference with rights

> (1) Exercise of rights

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

29 U.S.C. § 2615(a)(1).

provides as follows: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Under this provision, employers "have a proscriptive obligation—they may not penalize employees for exercising [the FMLA's substantive] rights."[10]

Norton alleges that CPS penalized her by terminating her for exercising her rights—*i.e.*, by requesting FMLA leave.  Norton alleges that her doctor placed CPS on notice of her need to take care of a serious health condition on July 5, 2005;[11] that she requested FMLA leave on the morning of July 11, 2005;[12] and that as a consequence, she was terminated the afternoon of July 11, 2005.[13]  She further alleges that the termination "constituted illegal discrimination under the FMLA."[14]  I speculate that CPS advanced its argument out of an abundance of caution[15] because Norton also alleged that "[t]he termination *interfered* with Plaintiff's rights under the FMLA . . . ,"[16] however, the complaint contains no factual allegations to support a claim that CPS violated

---

[10]*Chaffin*, 179 F.3d at 319.

[11]*See* docket entry #20, ¶ 9 (On July 5, 2005, Plaintiff's doctor faxed a work excuse to CPS putting CPS on notice formally of her condition.).

[12]*See id*., ¶ 10 (On July 11, 2005, in the morning, Plaintiff hand-delivered her FMLA paperwork to the nurse at Defendant CPS, once again putting Defendant on notice of Plaintiff's need for medical leave . . . .").

[13]*See id*., ¶ 11 (In the afternoon of July 11, 2005, Plaintiff was informed by Defendant that her employment was terminated, on the same day Plaintiff gave her employer the FMLA paperwork in the morning.)

[14]*See id*.

[15]See docket entry # 43, ¶ III.A. ("In this lawsuit, it is unclear whether Norton is asserting a prescriptive or proscriptive violation.  CPS Energy thus will address both potential arguments.").

[16]*See* docket entry # 20, ¶ 11 (emphasis added).

its prescriptive obligation.  Notably, Norton did not clarify the nature of her claims in her
response to CPS's motion for summary judgment—she stated only that "CPS has correctly stated
the law and legal requirements for a prescriptive, substantive FMLA violation."[17]  Because
Norton's complaint does not contain any factual allegations to form the basis of a claim for
prescriptive relief, I recommend the District Court dismiss this argument and consider CPS's
second argument.

### CPS's Argument about Prescriptive Relief

CPS's second summary-judgment argument addresses Norton's claim that CPS violated
its proscriptive obligation under the FMLA—that is, Norton's claim that CPS terminated her
because she requested FMLA leave.  CPS maintains that it is entitled to summary judgment
because it terminated Norton for failing to complete her filing duties—not for requesting FMLA
leave—and that Norton cannot raise a fact question about that reason.

Neither party has presented direct evidence of discrimination.  "[W]hen direct evidence of
discrimination is lacking, the *McDonnell Douglas* organizational framework applies to claims
that an employee was penalized for exercising rights guaranteed by the FMLA."[18]

> [That framework] places the onus on the plaintiff alleging retaliatory discharge to
> establish a prima facie case of discrimination by demonstrating that: (1) she
> engaged in a protected activity; (2) the employer discharged her; and (3) there is a
> causal connection between the protected activity and the discharge.  Once the
> plaintiff makes this preliminary showing, the employer must articulate a
> legitimate, nondiscriminatory reason for the plaintiff's termination.  If the
> employer carries this burden of production, the presumption raised by the prima
> facie case is rebutted.  To defeat summary judgment, the plaintiff must produce
> substantial probative evidence that the proffered reason was not the true reason for

---

[17]*See* docket entry # 44, ¶ III.A.

[18]*Chaffin*, 179 F.3d at 319.

the employment decision and that the real reason was the plaintiff's participation in the protected activity.  The plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual.  Rather, a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason.[19]

CPS does not dispute that Norton engaged in protected activity when she requested FMLA leave on July 11, 2005, or when her doctor notified CPS on July 5, 2005 that Norton needed FMLA leave.  In addition, CPS does not dispute that it terminated Norton on July 11, 2005.  CPS, however, maintains that Norton cannot present evidence of a causal connection between her leave request and her termination because the decision to terminate Norton was made on July 1, 2005—four days before Norton's doctor placed CPS on notice that Norton needed FMLA leave and ten days before Norton requested FMLA leave.

To support this argument, CPS presented documentary evidence showing that it decided to terminate Norton on July 1, 2005.  Specifically, Robert Temple—CPS's Deputy General Counsel—testified in his deposition[20] that: Norton worked as his secretary, Norton ignored her filing duties, he and Paul Gonzalez decided to terminate Norton on July 1, 2005, and Norton was terminated for failing to complete her filing.  When questioned about why he had responded to an interrogatory indicating that he decided to terminate Norton on June 27, 2005, Temple explained that he later verified the date by reviewing emails about Norton's ability to perform her job.  Temple also explained that he had previously met with Norton, discussed the need to resolve her back-filing, instructed Norton to focus on her filing, set a deadline for completing the filing, and

---

[19]*Chaffin*, 179 F.3d at 319-20.  *See also Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

[20]*See* docket entry # 43, exh. 6.

authorized Norton to take all the overtime she needed to complete the filing.  Temple testified

that he learned that Norton had filed a request for FMLA leave on July 11, 2005.  CPS also relies

on Paul Gonzalez's deposition. In that deposition, Gonzalez testified that: Norton also worked as

his secretary, he met with Temple on either June 27, 2005 or July 1, 2005 to discuss Norton's

failure to complete her filing, and he and Temple decided to terminate Norton at that time.[21]  This

evidence establishes a legitimate, nondiscriminatory reason for terminating Norton—*i.e.*, because

she failed to complete her filing duties.  This evidence also shows a lack of a causal connection

between Norton's leave request and her termination because the evidence shows that the decision

to terminate Norton occurred several days before her doctor placed CPS on notice that she might

need FMLA leave and several more days before Norton requested FMLA leave.  Because CPS

established a legitimate, nondiscriminatory reason for terminating Norton, the burden shifts to

Norton to produce substantial probative evidence that CPS's reason for terminating her was not

the true reason for her termination and that the real reason was because she requested FMLA

leave.  To survive summary judgment, Norton must produce evidence that raises a fact question

about whether CPS's reason for terminating her was a pretext for discriminating against her for

requesting FMLA leave.

      Norton relies on the timing of her termination to raise a fact question about pretext.

Norton maintains that the summary judgment evidence shows that the decision to terminate her

was made after July 5, 2005—the day her doctor placed CPS on notice that she needed FMLA

leave.  Norton complains that "not a single scrap of paper evidenc[es] that the decision to

terminate [her] was discussed until July 8, 2005."  Norton maintains that CPS altered its in-house

---

[21]*See id.*, exh. 4.

paperwork to show that the decision to terminate her was made on July 1, 2005.

Norton relies on two purported inconsistencies to show that CPS changed its in-house documentation to support its position that the decision to terminate Norton was made on July 1, 2005. The first inconsistency is the difference in Temple's answer to Norton's interrogatories that the decision to terminate Norton occurred on June 27, 2005[22] and Temple's later deposition testimony that the decision to terminate Norton was made on July 1, 2005. Norton suggests that the first response—June 27, 2005—was untruthful because it conflicted with an email exchange that occurred between Temple and Norton on June 27, 2005. Norton maintains that Temple changed her duties prospectively in the exchange, indicating that the decision to terminate her was not made on June 27, 2005. In the exchange,[23] Norton questioned Temple about whether she could go to the university book store at lunchtime to purchase a book. Temple responded, "That is fine by me. We need to get the filing done this week, however, so we can get you on substantive tasks. How are you doing on getting time entered in Case Track?" Norton responded, "I will have your filing, along with the opening of files, done this week. As for the time entry into Case Track, and as we discussed at our meeting it would be done after the filing. How far back to [sic] you want your time entered on Case Track?" Temple responded, "We started keeping time in March (March 1). I thought that it was to all be entered. As a threshold

---

[22]See docket entry # 45, exh. 19A (Interrogatory: "Please state the date that Defendant made the decision to terminate Plaintiff. Include in your anser why CPS waited until July 11, 2005 to articulate the termination to Plaintiff." Answer: "Defendant made the decision to terminate Plaintiff's employment on June 27, 2005. Once the decision was made, it took some time to consult with the appropriate people and prepare the necessary documentation. In the interim, the July 4th holiday occurred and Ms. Norton was out sick from work from July 5, 2005 to July 11, 2005. She was informed of her termination on the first day she returned to work, July 11, 2005.").

[23]See docket entry # 45, exh. 20.

matter I need you to look at the matters listed at the top of my May timesheet and identify the current or new matter numbers associated with each." Although Norton is not specific, she suggests that Temple changed her work priorities from filing to entering time in Case Track. This exchange, however, does not suggest that Temple changed Norton's work priorities. In the exchange, Temple wrote that the filing needed to be done that week. At most, the email exchange indicates that Temple had not yet made the decision to terminate Norton on June 27, 2005. The exchange then supports Temple's testimony that he decided to terminate Norton on July 1, 2005.

Norton complains that Temple changed his answer about the date of the termination decision during his disposition. On June 21, 2006, Temple testified that he and Gonzalez decided to terminate Norton on July 1, 2005. Temple explained that he originally thought that the termination decision was made on June 27, 2005, but later decided that the decision was made on July 1, 2005 after reviewing past emails and calendars. To the extent that the difference in Temple's answers constitutes an inconsistency, the difference does not raise a fact question about whether CPS's reasons for terminating Norton was a pretext for discriminating against her because she requested FMLA leave.

The second inconsistency is what Norton characterizes as CPS's effort to document July 1, 2005 as the date of the termination decision. Norton maintains that CPS's attempt to document the date illustrates that the decision was made after July 5, 2005—the day CPS received notice that Norton needed FMLA leave. Norton relies on an email from Helen Montoya—CPS's Legal Administrator—to Temple and a memorandum Montoya sent to Sylvia Vasquez—CPS's Human Resources Business Unit Advisor. Each document has an attachment

10

that documents Norton's performance issues.  The email is dated July 7, 2005 and contains the following materiel entries:

| 6-27-05 | Failure to Follow Through | Ms. Norton sent an e-mail stating that she would have the filing, along with opening of files that had been requested by Bob Temple completed by the end of the week. |
|---|---|---|
| 6-30-05 | Failure to Follow Through | Ms. Norton sent an e-mail stating that she was preparing new file and authorization requests for the March to June 2005 time sheet entries that needed to be input as soon as possible, and after completing that task, would return to the completion of Bob Temple's filing.  She stated that with the loss of an eight-hour sick day, she had fallen behind and was aware that the plan was to complete the filing and move onto more substantive projects, but that for the upcoming weekend, she had movers coming to her house that weekend, but should be back on schedule, and the filing up to date by Thursday morning, July 7. |
| 7-5-05 | | Ms. Norton called in sick.  A note from her doctor, Laura Suarez, was forwarded stating that she was being treated for psoriatic arthritis and would be able to return to work on July 11, 2005 with light duty only.  The doctor is recommending that Ms. Norton complete the paperwork for FMLA. |

The memorandum to Vasquez[24] is dated July 8, 2005 and has a similar attachment, except that the entries for June 27, 2005; June 30, 2005; and July 5, 2005 are different.  Those entries are shown below, with the differences indicated in bold-face type:

| 6/27/05 | Failure to Follow Through | Ms. Norton sent an e-mail stating that she would have the filing, along with opening of files that had been requested by Bob Temple completed by the end of the week. As of July 1st, the filing had not been completed.  **On June 30, Bob Temple** |
|---|---|---|

---

[24]*See* docket entry # 45, exh. 22.

|  |  | **contacted me dissatisfied with Ms. Norton's failure to meet multiple due dates for project completion after repeated counseling**. |
|---|---|---|
| 6/30/05 | Failure to Follow Through | Ms. Norton sent an e-mail stating that she was preparing new file and authorization requests for the March to June 2005 time sheet entries that needed to be input as soon as possible, and after completing that task, would return to the completion of Bob Temple's filing.  She stated that with the loss of an eight-hour sick day, she had fallen behind and was aware that the plan was to complete the filing and move onto more substantive projects, but that for the upcoming weekend, she had movers coming to her house that weekend, but should be back on schedule, and the filing up to date by Thursday morning, July 7.  **Bob Temple indicated that he desired to take corrective action**. |

The second document contains no entry for July 5, 2005.  Norton contends that these inconsistencies show that CPS intentionally altered its documentation to show that the decision to terminate her was made on July 1, 2005 and that the termination had nothing to do with Norton's request for FMLA leave.  The inconsistencies in the documents, however, do not contradict Temple's testimony about when the termination decision was made or why Norton was terminated.  Even considered with the inconsistencies in Temple's answers about when the termination decision was made, the inconsistencies in the documents recording Norton's performance issues do not raise a fact question about whether Norton's failure to complete her filing was not the true reason for her termination and that the real reason was because she requested FMLA leave.

      Norton emphasizes the temporal proximity of her leave request and CPS's notification of the termination; however, that timing is not enough to overcome CPS's evidence indicating that

it terminated Norton for failing to complete her filing duties.  Indeed, Norton's summary-judgment evidence consists of only timing.  She has presented no evidence that raises a fact question about whether the failure to complete her filing duties was the real reason CPS terminated her.  Because she has not, CPS is entitled to summary judgment on Norton's discrimination claim.

### Recommendation

Norton has failed to raise a fact question about CPS's reason for terminating her.  Consequently, I recommend that the District Court GRANT CPS's motion (docket entry # 43).  Because that action will resolve all claims in this case, I also recommend the District Court ENTER summary judgment in CPS's favor.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[25]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to

---

[25] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[26]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[27]

　　　　　**SIGNED** on March 19, 2007.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[26]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[27]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

14